DSS:RMT

UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - : x   MISC. 11-231

IN THE MATTER OF AN APPLICATION OF      :
THE UNITED STATES OF AMERICA FOR        :
ORDERS AUTHORIZING (1) THE USE OF PEN   :   SEALED APPLICATION
REGISTER AND TRAP AND TRACE DEVICES     :
WITH PROSPECTIVE CELL-SITE              :
INFORMATION AND (2) THE RELEASE OF      :
HISTORICAL CELL-SITE AND SUBSCRIBER     :
INFORMATION FOR MOBILE TELEPHONES       :
ASSIGNED NUMBERS (347) 552-9807 AND     :
(347) 359-5051                          :
                                        x
- - - - - - - - - - - - - - - - - -

EASTERN DISTRICT OF NEW YORK, SS:

Richard M. Tucker, an Assistant United States Attorney

for the Eastern District of New York, hereby applies to the Court

for Orders authorizing pen register and trap and trace devices

with prospective cell-site information and the release of

historical cell-site and subscriber information for (347)

552-9807, the number for a mobile telephone serviced by T-Mobile

(the "9807 TELEPHONE"), and (347) 359-5051, the number for a

mobile telephone serviced by Sprint Nextel (the "5051 TELEPHONE")

(together, the SUBJECT TELEPHONES).  In support of this

application I state the following:

I.   Facts Supporting Application

1.   I have discussed this matter fully with a law

enforcement officer involved in the investigation.  Based upon

that discussion, I believe and for the following reasons hereby

certify that the information likely to be obtained by the use of

a pen register and trap and trace device is relevant to an ongoing criminal investigation as required by 18 U.S.C. § 3123(a). First, the Federal Bureau of Investigation (the "Investigative Agency") is conducting a criminal investigation into possible violations of federal criminal laws, including narcotics offenses in violation of 21 U.S.C. §§ 841, 843 and 846 (the "specified offenses"). Second, it is believed that ROBERT FIELDS, also known as "Boy Boy," ROBERT JONES and others known and unknown, have used and will continue to use the SUBJECT TELEPHONES in furtherance of the specified offenses. Third, pen register and trap and trace device information will further the investigation by helping to identify co-conspirators.

2. Based upon discussions with a special agent of the Investigative Agency, the government sets forth the following facts showing that probable cause exists to believe that information identifying the antenna tower receiving transmissions from the SUBJECT TELEPHONES at the beginning and the end of a call or text message transmission made or received by the SUBJECT TELEPHONES, including information on what portion of that tower is receiving the transmission ("PROSPECTIVE CELL-SITE INFORMATION"), will constitute or lead to evidence of the

2

specified offenses, as well as help to identify individuals who are engaged in the commission of these offenses:[1]

> a.    On March 31, 2011, the Honorable Roslynn R. Mauskopf signed orders authorizing the interception of wire communications for a mobile telephone assigned number 347-535-6911 (the "6911 TELEPHONE") that agents have determined is used primarily by HARVEY CHRISTIAN, also known as "Black" ("H. CHRISTIAN"). H. CHRISTIAN has been identified through a confidential source ("CI-1"),[2] NYPD detectives and police

---

[1]    In presenting probable cause to support its prospective cell-site information request, the government does not concede that such cell-site records — routinely retained by wireless carriers as business records — may only be obtained via a warrant under Fed. R. Crim. P. 41.  See In re Application, 632 F. Supp. 2d 202 (E.D.N.Y. 2008) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.); In re Application, Misc. No. 08-533 (BMC) (E.D.N.Y. Jan. 12, 2009) (same); In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (same).

[2]    CI-1 has previously worked primarily with the New York City Police Department ("NYPD").  He/she has provided information to NYPD investigators intermittently for more than nine years, in return for cash payments and assistance with achieving favorable dispositions in prior arrests.  I know that CI-1 is reliable because I have been informed that he/she has provided reliable information in the past that was relied upon to obtain multiple search warrants which resulted in the seizure of narcotics and firearms.  However, CI-1 was arrested recently for selling fake subway cards.  At the time CI-1 was arrested, CI-1 had in his/her possession a substance believed to be crack cocaine.  In addition, CI-1 has a substantial criminal history. Nevertheless, we believe CI-1 is a reliable source because CI-1 has previously provided accurate information, and because, as set forth in great detail below, CI-1's interactions with the targets of this investigation have typically been monitored and recorded by law enforcement.

investigative reports as being a leader of an organization engaged in the distribution of large amounts of crack cocaine and other controlled narcotic substances in and around the North Shore of Staten Island (the "CHRISTIAN ENTERPRISE"). The Investigative Agency began monitoring the 6911 TELEPHONE on April 4, 2011.

        b.    A special agent with the Investigative Agency has informed me that CI-1 has contacted H. CHRISTIAN on at least three separate occasions on the 6911 TELEPHONE for the purpose of purchasing crack cocaine. On all of those occasions -- in January 2011, February 2011 and March 2011 -- CI-1, in coordination with the NYPD, was successful in purchasing a substance that has field-tested positive for the presence of cocaine and, based on its texture and appearance, appears to be crack cocaine, from H. CHRISTIAN or ROBERT JONES.

        c.    A special agent with the Investigative Agency familiar with the information being gathered through the ongoing interception of calls on the 6911 TELEPHONE has informed me that H. CHRISTIAN, using the 6911 TELEPHONE, regularly communicates with an individual who appears to be ROBERT JONES[3] via the 5051

---

      [3] A special agent with the Investigative Agency has informed me that the user of the 5051 TELEPHONE is likely ROBERT JONES based on the fact that H. CHRISTIAN calls the person who answers the phone "Rob," because, based on information from CI-1, JONES is known to operate a phone used by the CHRISTIAN ENTERPRISE to coordinate the sale of controlled narcotics, and because the conversations between H. CHRISTIAN and the individual

TELEPHONE, and that these calls frequently appear to relate to the sale of crack cocaine and other controlled narcotic substances.  The following are illustrative examples of such calls that have been intercepted via the wiretap on the 6911 TELEPHONE:

       i.   On April 4, 2011, the individual using the 5051 TELEPHONE told H. CHRISTIAN that he had "800" and two "50s"[4] left.

       ii.  Also on April 4, 2011, the individual using the 5051 TELEPHONE asked H. CHRISTIAN whether he could give "Smurf" a "50" and H. CHRISTIAN agreed, but advised that H. CHRISTIAN has a "dub"[5] for "Smurf" as well.

       iii. On April 6, 2011, H. CHRISTIAN asked the individual using the 5051 TELEPHONE whether he had made "dubs" and the individual answered in the affirmative.

       d.  A special agent with the Investigative Agency has informed me that H. CHRISTIAN, using the 6911 TELEPHONE, also regularly communicates with an individual who appears to be

---

using the 5051 TELEPHONE frequently relate to the sale of narcotics at H. CHRISTIAN's direction.

[4] A special agent with the Investigative Agency has informed me that a "50" is a bag of approximately 1.2 grams of crack cocaine, which is sold for $50.

[5] A special agent with the Investigative Agency has informed me that a "dub" is a bag of approximately .5 grams of crack cocaine, which is sold for $20.

ROBERT FIELDS, also known as "Boy Boy,"[6] via the 9807 TELEPHONE, and that these calls frequently appear to relate to the sale of crack cocaine and other controlled narcotic substances.  ROBERT FIELDS, also known as "Boy Boy," is believed to be a member of the CHRISTIAN ENTERPRISE.  Law enforcement has conducted surveillance on ROBERT FIELDS, also known as "Boy Boy," and observed him selling suspected crack cocaine to others on multiple occasions, including in August and September 2010.  The following are illustrative examples of calls that have been intercepted via the wiretap on the 6911 TELEPHONE:

      i.   On April 4, 2011, H. CHRISTIAN called the 9807 TELEPHONE and asked the individual using the 9807 TELEPHONE whether he would take "30."  That individual responded that he could not afford to do so.  H. CHRISTIAN then stated that H. CHRISTIAN would take the "whole 60."[7]

      ii.   Approximately 30 minutes later on April 4, 2011, H. CHRISTIAN called the 9807 TELEPHONE and told the

---

[6] A special agent with the Investigative Agency has informed me that the user of the 9807 TELEPHONE is likely ROBERT FIELDS, also known as "Boy Boy."  That agent is familiar with the voice of ROBERT FIELDS, also known as "Boy Boy," from previously recorded telephone conversations.  In addition, on at least one occasion, H. CHRISTIAN stated during a call that he was going to call "Boy Boy" and his next call was to the 9807 TELEPHONE.

[7] A special agent with the Investigative Agency has informed me that he believes H. CHRISTIAN is referring to quantities of crack cocaine when he refers to "60" and "30."

individual using that phone to tell a third unnamed individual that H. CHRISTIAN would take the "60" and to call H. CHRISTIAN.

       iii.  On April 5, 2011, the individual using the 9807 TELEPHONE called H. CHRISTIAN and told H. CHRISTIAN that a third individual wanted "it" and asked where "Rob" was.[8]

       e.  I have been informed by a special agent of the Investigative Agency that based on that agent's training and experience, subscriber information with respect to telephone numbers identified by a pen register or trap and trace device has yielded information that was relevant and material in previous narcotics investigations.  Such information includes leads relating to: (1) the names of suspected suppliers, customers and other individuals who assist in the distribution of narcotics; (2) the addresses of "stash" houses where narcotics are stored; (3) the identity of transportation sources used by drug traffickers; (4) the locations of money transfer businesses used by members of the operation to launder proceeds of drug trafficking activities or through which money is exchanged with co-conspirators; (5) the identity of bank and credit card accounts used by members of the organization to obtain good and services used by it; (6) the geographic breadth of the suspected

---

    [8] A special agent with the Investigative Agency has informed me that he believes that ROBERT FIELDS, also known as "Boy Boy" was asking where ROBERT JONES was so he could arrange for the third individual to purchase crack cocaine from ROBERT JONES.

drug trafficking operation and (7) the identity of the potential organizers, leaders, managers, or supervisors of the suspected trafficking operation. The investigating agent has further advised me that, based upon that agent's training and experience, one way to identify co-conspirators is to obtain subscriber information for calls made to and from the SUBJECT TELEPHONES, and then conduct an investigation concerning those names, addresses and the accounts they use to pay for telephone service. Using subscriber information, law enforcement agents could then conduct surveillance at the addresses and determine if criminal activity was occurring there, which in turn could result in the identification of additional co-conspirators and possible narcotics storage locations. Likewise, the investigating agent has advised me that, based upon that agent's training and experience, prospective cell-site information can be used to aid agents in surveilling targets as they move from one location to another and identify the location of co-conspirators and stash houses. Likewise, historical cell-site information can be used to identify co-conspirators' residences, meeting places and stash houses.

3. The government submits that the foregoing also constitutes specific and articulable facts showing that there are reasonable grounds to believe that the following information is

relevant and material to an ongoing criminal investigation of the specified offenses:

        a.   subscriber information pertaining to telephone numbers identified through the pen register and trap and trace devices, to be limited to the names and addresses, whether listed or unlisted, length of service, periods of telephone activation and means of payment for all dialing, routing, addressing or signaling information captured by the pen registers on the SUBJECT TELEPHONES and for dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the SUBJECT TELEPHONES as captured by the trap and trace devices on the SUBJECT TELEPHONES ("SPECIFIED SUBSCRIBER INFORMATION");[9] and

        b.   recorded information that identifies the antenna tower that received transmissions from the SUBJECT TELEPHONES at the beginning and the end of calls or text message transmission made or received by the SUBJECT TELEPHONES, including information on what portion of that tower received the transmission ("HISTORICAL CELL-SITE INFORMATION"), for the period

---

[9] The SPECIFIED SUBSCRIBER INFORMATION therefore includes records that would also be subject to disclosure by subpoena under 18 U.S.C. § 2703(c)(2)(A), (B), (D), (E) and (F), but excludes "local and long distance telephone connection records, or records of session times and durations" as described in 18 U.S.C. § 2703(c)(2)(C).

Based upon the foregoing, the government requests that the Court issue the enclosed proposed Orders that provide:

      a.   pursuant to 18 U.S.C. §§ 3122 and 3123, authorization for the installation and use of a pen register to record or decode dialing, routing, addressing, or signaling information — excluding the decoding of post-cut-through dialed digits ("PCTDD")[10] -- transmitted from the SUBJECT TELEPHONES, to record the date and time of such dialings or transmissionsS, and to record the length of time the telephone receiver in question is "off the hook" for incoming or outgoing calls for a period of 60 days;

      b.   pursuant to 18 U.S.C. §§ 3122 and 3123, authorization for installation and use of a trap and trace device on the SUBJECT TELEPHONES to capture and record the incoming

---

[10] PCTDD "are digits that are dialed from a telephone after a call is connected or 'cut-through.'" In re Application, 632 F. Supp. at 203 n.1. Pursuant to the proposed Order to Service Provider, if possible, the provider will forward only pre-cut-through-dialed digits to the Investigative Agency. If the provider's technical capabilities require it to forward all dialed digits including PCTDD, however, the Investigative Agency will only decode and forward to the assigned special agents the numbers that are dialed before the call is cut through. Thus no PCTDD will be decoded or accessed by anyone. See id. at 204 n.3 ("It is irrelevant that the provider will forward PCTDD to the Government and that the Government will therefore be able, if it violates the court order, to record and decode it.").

electronic or other impulses which identify the originating numbers or other dialing, routing, addressing, or signaling information reasonably likely to identify the sources of wire or electronic communications and to record the date, time and duration of calls created by such incoming impulses, for a period of 60 days, and that the tracing operations be without geographical limits;

        c.    pursuant to 18 U.S.C. § 3123(b)(1)(C), authorization for the requested installation and use of a pen register and a trap and trace device to include authorization for any changed telephone number assigned to an instrument bearing the same ESN or IMSI as the SUBJECT TELEPHONES, or any changed ESN or IMSI subsequently assigned to the same telephone numbers as the SUBJECT TELEPHONES, or any additional changed telephone number and/or ESN or IMSI, whether the changes occur consecutively or simultaneously, listed to the same subscriber and account number as the SUBJECT TELEPHONES;

        d.    pursuant to 18 U.S.C. § 2703(c)(1) and (d), a directive to the service provider, and to any other local, long distance, or wireless carrier servicing the SUBJECT TELEPHONES or a telephone that communicates with the SUBJECT TELEPHONES to supply the SPECIFIED SUBSCRIBER INFORMATION, upon oral or written request by special agents of the Investigative Agency, for a period of 60 days;

11

e.    pursuant to 18 U.S.C. § 2703(c)(1) and (d), a directive to the service provider to within seven days supply HISTORICAL CELL-SITE INFORMATION for the period from March 1, 2011 until 11:00 a.m. Eastern Time on the date of the proposed Orders; and

f.    pursuant to 18 U.S.C. §§ 3122 and 3123, the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., and Fed. R. Crim. P. 41, a directive to the service provider to supply PROSPECTIVE CELL-SITE INFORMATION for a period of 60 days.

5.    The government further requests that the Court direct the service provider, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order, to notify special agents of the Investigative Agency, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the SUBJECT TELEPHONES, including telephone numbers and subscriber information (published and non-published, and excepting call detail records as described in 18 U.S.C. § 2703(c)(2)(C)), associated with these service changes.

6.    The government further requests pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), the Court direct that the service provider and any other person or entity providing wire or electronic communication service in the United States whose

12

assistance may facilitate execution of the Orders furnish the information, facilities, and technical assistance necessary to accomplish unobtrusively the installation and use of the pen register and trap and trace device with compensation to be paid by the Investigative Agency for reasonable expenses directly incurred in providing such facilities and assistance.

7.  The government further requests that the Orders direct the service provider, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order, to furnish the results of the pen register and trap and trace device installations to special agents of the Investigative Agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

8.  The government further requests that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the SUBJECT TELEPHONES outside of daytime hours.

9.  The government further requests pursuant to 18 U.S.C. §§ 3123(d) and 2705(b), that the service provider, and any other person or entity whose assistance is used to facilitate execution of the Orders be ordered not to disclose to the listed subscriber of the telephone, or to any other person (a) the existence of the Order of Authorization; (b) the existence of the

13

Order to Service provider; (c) the existence of the pen register and trap and trace device; (d) the production of the HISTORICAL and PROSPECTIVE CELL-SITE INFORMATION and (e) the production of the SPECIFIED SUBSCRIBER INFORMATION, to the listed subscriber for the SUBJECT TELEPHONES, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONES, or to any other person, unless and until otherwise ordered by the Court.   There is "reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result."   18 U.S.C. § 3103a(b)(1).   Providing prior notice to the subscriber or user of the SUBJECT TELEPHONES would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, or flee from potential prosecution.

　　　　10.   Finally, the government requests that pursuant to 18 U.S.C. § 3103a(b) and Fed. R. Crim. P. 41(f)(3), the Court authorize notice to be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extensions thereof.

11.   No prior request for the relief set forth herein has been made except to the extent set forth above.   The foregoing is affirmed under the penalties of perjury.   See 28 U.S.C. § 1746.

Dated:      Brooklyn, New York
            April 8, 2011

Richard M. Tucker
Assistant United States Attorney
(718) 254-6204

15

UNITED STATES DISTRICT COURT  **11-231**
EASTERN DISTRICT OF NEW YORK **MISC.**

- - - - - - - - - - - - - - - - - - x
                                    :
IN THE MATTER OF AN APPLICATION OF  :
THE UNITED STATES OF AMERICA FOR    :
ORDERS AUTHORIZING (1) THE USE OF PEN :       SEALED ORDER TO
REGISTER AND TRAP AND TRACE DEVICES :          SERVICE PROVIDER
WITH PROSPECTIVE CELL-SITE          :          T-MOBILE_____
INFORMATION AND (2) THE RELEASE OF  :
HISTORICAL CELL-SITE AND SUBSCRIBER :
INFORMATION FOR MOBILE TELEPHONES   :
ASSIGNED NUMBERS (347) 552-9807 AND :
(347) 359-5051                      :
                                    :
                                    :
- - - - - - - - - - - - - - - - - - x

WHEREAS this Court has, upon the application of the

United States of America, entered an Order authorizing a pen

register and trap and trace device with prospective cell-site

information and the release of historical and cell-site

information, the Court hereby ORDERS:

1. Pursuant to 18 U.S.C. § 3123, special agents of

the Federal Bureau of Investigation (the "Investigative Agency")

may install, or cause to be installed, and use a pen register to

record or decode dialing, routing, addressing, or signaling

information transmitted from (347) 552-9807, the number assigned

a mobile telephone (the "SUBJECT TELEPHONE") issued by T-Mobile

(the "service provider") to record the date and time of such

dialings or transmissions, and to record the length of time the

telephone receiver in question is "off the hook" for incoming or

outgoing calls for a period of 60 days, beginning at any time

within 14 days from the date of this Order.

2.    To the extent possible in light of the service provider's technical capabilities, the service provider shall forward to the Investigative Agency only those digits dialed before a call is cut-through.  However, to the extent that the service provider is unable to exclude post-cut-through dialed digits, the service provider shall forward all dialed digits to the Investigative Agency.

3.    Pursuant to 18 U.S.C. § 3123, special agents of the Investigative Agency may install, or cause to be installed, and use a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating number, or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, and to record the date, time, and duration of calls created by such incoming impulses, for a period of 60 days, beginning at any time within 14 days from the date of this Order, and the tracing operations shall be without geographical limits.

4.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), for a period of 60 days, beginning at any time within 14 days from the date of this Order, the service provider and any local, long distance or wireless provider, or person or entity providing wire or electronic communication service in the United States or any other person or entity servicing either the SUBJECT TELEPHONE or

2

a telephone that communicates with the SUBJECT TELEPHONE, shall supply subscriber information pertaining to telephone numbers identified through the pen register and trap and trace device, to be limited to the names and addresses, whether listed or unlisted, length of service, periods of telephone activation and means of payment for all dialing, routing, addressing, or signaling information captured by the pen register on the SUBJECT TELEPHONE and for dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the SUBJECT TELEPHONE as captured by the trap and trace device on the SUBJECT TELEPHONE ("SPECIFIED SUBSCRIBER INFORMATION"),[1] upon oral or written request by special agents of the Investigative Agency.

5.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), within seven days the service provider shall supply recorded information identifying the antenna tower that received transmissions from the SUBJECT TELEPHONE at the beginning and the end of calls or text message transmission made or received by the SUBJECT TELEPHONE, including information on what portion of that tower received the transmission ("HISTORICAL CELL-SITE INFORMATION"),

---

[1] The SPECIFIED SUBSCRIBER INFORMATION includes records that would also be subject to disclosure by subpoena under 18 U.S.C. § 2703(c)(2)(A), (B), (D), (E) and (F), but excludes "local and long distance telephone connection records, or records of session times and durations" as described in 18 U.S.C. § 2703(c)(2)(C).

3

for the period from March 1, 2011 until 11:00 a.m. Eastern Time on the date of this Order.

6.    Pursuant to 18 U.S.C. §§ 3122 and 3123, the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., and Fed. R. Crim. P. 41, for a period of 60 days, beginning at any time within 14 days from the date of this Order, the service provider shall supply information that identifies the antenna tower receiving transmissions from the SUBJECT TELEPHONE at the beginning and the end of a call or text message transmission made or received by the SUBJECT TELEPHONE, including information on what portion of that tower is receiving the transmission ("PROSPECTIVE CELL-SITE INFORMATION").

7.    Pursuant to 18 U.S.C. § 3123(b)(1)(C), the authorization for the installation and use of a pen register and a trap and trace device applies not only to the telephone number listed above for the SUBJECT TELEPHONE, but also to any changed telephone number assigned to an instrument bearing the same ESN or IMEI numbers as the SUBJECT TELEPHONE, or any changed ESN or IMEI number subsequently assigned to the same telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number and/or ESN or IMEI number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the SUBJECT TELEPHONE.

4

8.   The service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order shall notify special agents of the Investigative Agency, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the SUBJECT TELEPHONE, including telephone numbers and subscriber information (published and non-published, and excepting call detail records, as described in 18 U.S.C. § 2703(c)(2)(C)), associated with these service changes.

9.   Pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), and 18 U.S.C. § 2703(c) and (d), upon service of this Order upon it the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order shall furnish special agents of the Investigative Agency forthwith all information, including but not limited to telephone subscriber information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace device unobtrusively and with minimum interference.

10.   The service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of

5

the Order furnish the results of the pen register and trap and trace device installations to special agents of the Investigative Agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

11. The service provider and any other person or entity that provides technical assistance in executing this Order shall be compensated by the Investigative Agency for reasonable expenses directly incurred in providing such assistance.

12. This Order shall be sealed until otherwise ordered by the Court, except that copies may be retained by the United States Attorney's Office, the Investigative Agency, the service provider and any other person or entity whose assistance is used to execute this Order.

13. Unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction: (a) the existence of the Order of Authorization; (b) the existence of the Order to Service provider; (c) the existence of the pen register and trap and trace device; (d) the production of the HISTORICAL or PROSPECTIVE CELL-SITE INFORMATION and (e) the production of the SPECIFIED SUBSCRIBER INFORMATION, to the listed subscriber for the SUBJECT

6

TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Dated:      Brooklyn, New York

April 8 ' 2'11

s/ALC
_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

7

UNITED STATES DISTRICT COURT  **MISC.** 11 -231

EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - x
                                        :
IN THE MATTER OF AN APPLICATION OF      :
THE UNITED STATES OF AMERICA FOR        :
ORDERS AUTHORIZING (1) THE USE OF PEN   :    SEALED ORDER
REGISTER AND TRAP AND TRACE DEVICES     :    OF AUTHORIZATION
WITH PROSPECTIVE CELL-SITE              :
INFORMATION AND (2) THE RELEASE OF      :
HISTORICAL CELL-SITE AND SUBSCRIBER     :
INFORMATION FOR MOBILE TELEPHONES       :
ASSIGNED NUMBERS (347) 552-9807 AND     :
(347) 359-5051                          :
                                        x
- - - - - - - - - - - - - - - - - - - -

Upon the application of the United States of America,

THE COURT HEREBY FINDS:

1.   Pursuant to 18 U.S.C. § 3123, the applicant has

certified that the information likely to be obtained by use of

pen register and a trap and trace devices on (347) 552-9807, the

number for a mobile telephone serviced by T-Mobile, and (347)

359-5051, the number for a mobile telephone serviced by Sprint

Nextel (together, the "SUBJECT TELEPHONES"), is relevant to an

ongoing criminal investigation being conducted by the Federal

Bureau of Investigation (the "Investigative Agency") into

possible violations of 21 U.S.C. §§ 841, 843 and 846 by HARVEY

CHRISTIAN, also known as "Black," ROBERT FIELDS, also known as

"Boy Boy," ROBERT JONES and others (the "specified offenses").

2.   Pursuant to 18 U.S.C. § 2703(c)(1) and (d), the

applicant has offered specific and articulable facts showing that

there are reasonable grounds to believe that the subscriber and

historical cell-site information specified below are relevant and material to an ongoing criminal investigation of the specified offenses.

3.    Pursuant to 18 U.S.C. §§ 3122 and 3123, the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., and Fed. R. Crim. P. 41, the applicant has demonstrated that probable cause exists to believe that the prospective cell-site information specified below will constitute or lead to evidence of the specified offenses, as well as the identification of individuals who are engaged in the commission of these offenses.

NOW, THEREFORE, IT IS HEREBY ORDERED:

4.    Pursuant to 18 U.S.C. § 3123, special agents of the Investigative Agency may install, or cause to be installed, and use pen registers to record or decode dialing, routing, addressing, or signaling information transmitted from the SUBJECT TELEPHONES — excluding the decoding of post-cut-through dialed digits ("PCTDD")[1] — to record the date and time of such dialings or transmissions, and to record the length of time the telephone

_____

[1] PCTDD "are digits that are dialed from a telephone after a call is connected or 'cut-through.'" In re Application, 632 F. Supp. 2d 202, 203 n.1 (E.D.N.Y. 2008). Pursuant to the proposed Order to Service Provider, if possible, the provider will forward only pre-cut-through-dialed digits to the Investigative Agency. If the provider's technical capabilities require it to forward all dialed digits, including PCTDD, however, the Investigative Agency shall only decode and forward to the assigned special agents the numbers that are dialed before the call is cut through.

2

receiver in question is "off the hook" for incoming or outgoing
calls for a period of 60 days, beginning at any time within 14
days from the date of this Order, and that the tracing operations
be without geographical limits.

5.    Pursuant to 18 U.S.C. § 3123, special agents of
the Investigative Agency may install, or cause to be installed,
and use trap and trace devices on the SUBJECT TELEPHONES to
capture and record the incoming electronic or other impulses
which identify the originating number, or other dialing, routing,
addressing, and signaling information reasonably likely to
identify the source of a wire or electronic communication, and to
record the date, time and duration of calls created by such
incoming impulses, for a period of 60 days, beginning at any time
within 14 days from the date of this Order, and that the tracing
operations be without geographical limits.

6.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), for a
period of 60 days, beginning at any time within 14 days from the
date of this Order, the service providers and any other local,
long distance or wireless carrier servicing the SUBJECT
TELEPHONES shall supply subscriber information pertaining to
telephone numbers identified through the pen register and trap
and trace device, to be limited to the names and addresses,
whether listed or unlisted, length of service, periods of
telephone activation and means of payment for all dialing,

3

routing, addressing, or signaling information captured by the pen registers on the SUBJECT TELEPHONES and for dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the SUBJECT TELEPHONES as captured by the trap and trace devices on the SUBJECT TELEPHONES ("SPECIFIED SUBSCRIBER INFORMATION"),[2] upon oral or written request by special agents of the Investigative Agency.

7.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), within seven days the service provider shall supply recorded information that identifies the antenna tower that received transmissions from the SUBJECT TELEPHONES at the beginning and the end of calls or text message transmission made or received by the SUBJECT TELEPHONES, including information on what portion of that tower received the transmission ("HISTORICAL CELL-SITE INFORMATION"), for the period from March 1, 2011 until 11:00 a.m. Eastern Time on the date of this Order.

8.    Pursuant to 18 U.S.C. §§ 3122 and 3123, the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., and Fed. R. Crim. P. 41, for a period of 60 days, beginning at any time within 14

---

[2] The SPECIFIED SUBSCRIBER INFORMATION includes records that would also be subject to disclosure by subpoena under 18 U.S.C. § 2703(c)(2)(A), (B), (D), (E) and (F), but excludes "local and long distance telephone connection records, or records of session times and durations" as described in 18 U.S.C. § 2703(c)(2)(C).

4

days from the date of this Order, the service provider shall supply information identifying the antenna tower receiving transmissions from the SUBJECT TELEPHONES at the beginning and the end of a call or text message transmission made or received by the SUBJECT TELEPHONES, including information on what portion of that tower is receiving the transmission ("PROSPECTIVE CELL-SITE INFORMATION").

9.   This authorization for the installation and use of pen register and a trap and trace devices applies not only to the telephone numbers listed above for the SUBJECT TELEPHONES, but also to any changed telephone number assigned to an instrument bearing the same ESN or IMEI numbers as the SUBJECT TELEPHONES, or any changed ESN or IMEI number subsequently assigned to the same telephone number as the SUBJECT TELEPHONES, or any additional changed telephone number and/or ESN or IMEI, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the SUBJECT TELEPHONES.

10.   The service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order notify special agents of the Investigative Agency, upon oral or written request, of any and all changes in service regarding the SUBJECT TELEPHONES to include telephone numbers and

subscriber information (published and non-published and excepting call detail records as described in 18 U.S.C. § 2703(c)(2)(C)) associated with these service changes.

11.   Pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2) and 18 U.S.C. § 2703(c) and (d), the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order shall furnish special agents of the Investigative Agency forthwith all information, including but not limited to telephone subscriber information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace device unobtrusively and with minimum interference.

12.   The service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order furnish the results of the pen register and trap and trace device installations to special agents of the Investigative Agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

13.   The service provider and any other person or entity whose assistance is used to facilitate this Order be compensated by the Investigative Agency for reasonable expenses directly incurred in providing such assistance.

6

14.  The Court's Orders, the warrant and the application shall be sealed until further Order of the Court, except that copies of the warrant and the Court's Orders, in full or redacted form, may be maintained by the United States Attorney's Office, and may be served on law enforcement officers, and other government and contract personnel acting under the supervision of such law enforcement officers, and the service provider as necessary to effectuate the Court's Orders.

15.  Pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), service of notice may be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extension thereof.

16.  The service provider, its affiliates, officers, employees, and agents shall not disclose the Court's Orders or the underlying investigation, until notice is given as provided above.

Dated:   Brooklyn, New York
         April 8 , 2011

                                    S/ALC
                        _____
                        UNITED STATES MAGISTRATE JUDGE
                        EASTERN DISTRICT OF NEW YORK

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

11 -231

- - - - - - - - - - - - - - - - - - x
                                     :
IN THE MATTER OF AN APPLICATION OF   :
THE UNITED STATES OF AMERICA FOR     :
ORDERS AUTHORIZING (1) THE USE OF PEN :   SEALED ORDER TO
REGISTER AND TRAP AND TRACE DEVICES  :    SERVICE PROVIDER
WITH PROSPECTIVE CELL-SITE           :    SPRINT NEXTEL
INFORMATION AND (2) THE RELEASE OF   :
HISTORICAL CELL-SITE AND SUBSCRIBER  :
INFORMATION FOR MOBILE TELEPHONES    :
ASSIGNED NUMBERS (347) 552-9807 AND  :
(347) 359-5051                       :
                                     :
- - - - - - - - - - - - - - - - - - x

　　　　　WHEREAS this Court has, upon the application of the

United States of America, entered an Order authorizing a pen

register and trap and trace device with prospective cell-site

information and the release of historical and cell-site

information, the Court hereby ORDERS:

　　　　　1.　Pursuant to 18 U.S.C. § 3123, special agents of

the Federal Bureau of Investigation (the "Investigative Agency")

may install, or cause to be installed, and use a pen register to

record or decode dialing, routing, addressing, or signaling

information transmitted from (347) 359-5051, the number assigned

a mobile telephone (the "SUBJECT TELEPHONE") issued by Sprint

Nextel (the "service provider") to record the date and time of

such dialings or transmissions, and to record the length of time

the telephone receiver in question is "off the hook" for incoming

or outgoing calls for a period of 60 days, beginning at any time

within 14 days from the date of this Order.

2.    To the extent possible in light of the service provider's technical capabilities, the service provider shall forward to the Investigative Agency only those digits dialed before a call is cut-through.  However, to the extent that the service provider is unable to exclude post-cut-through dialed digits, the service provider shall forward all dialed digits to the Investigative Agency.

3.    Pursuant to 18 U.S.C. § 3123, special agents of the Investigative Agency may install, or cause to be installed, and use a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating number, or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, and to record the date, time, and duration of calls created by such incoming impulses, for a period of 60 days, beginning at any time within 14 days from the date of this Order, and the tracing operations shall be without geographical limits.

4.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), for a period of 60 days, beginning at any time within 14 days from the date of this Order, the service provider and any local, long distance or wireless provider, or person or entity providing wire or electronic communication service in the United States or any other person or entity servicing either the SUBJECT TELEPHONE or

2

a telephone that communicates with the SUBJECT TELEPHONE, shall supply subscriber information pertaining to telephone numbers identified through the pen register and trap and trace device, to be limited to the names and addresses, whether listed or unlisted, length of service, periods of telephone activation and means of payment for all dialing, routing, addressing, or signaling information captured by the pen register on the SUBJECT TELEPHONE and for dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the SUBJECT TELEPHONE as captured by the trap and trace device on the SUBJECT TELEPHONE ("SPECIFIED SUBSCRIBER INFORMATION"),[1] upon oral or written request by special agents of the Investigative Agency.

     5.    Pursuant to 18 U.S.C. § 2703(c)(1) and (d), within seven days the service provider shall supply recorded information identifying the antenna tower that received transmissions from the SUBJECT TELEPHONE at the beginning and the end of calls or text message transmission made or received by the SUBJECT TELEPHONE, including information on what portion of that tower received the transmission ("HISTORICAL CELL-SITE INFORMATION"),

_____

     [1] The SPECIFIED SUBSCRIBER INFORMATION includes records that would also be subject to disclosure by subpoena under 18 U.S.C. § 2703(c)(2)(A), (B), (D), (E) and (F), but excludes "local and long distance telephone connection records, or records of session times and durations" as described in 18 U.S.C. § 2703(c)(2)(C).

for the period from March 1, 2011 until 11:00 a.m. Eastern Time on the date of this Order.

6.   Pursuant to 18 U.S.C. §§ 3122 and 3123, the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., and Fed. R. Crim. P. 41, for a period of 60 days, beginning at any time within 14 days from the date of this Order, the service provider shall supply information that identifies the antenna tower receiving transmissions from the SUBJECT TELEPHONE at the beginning and the end of a call or text message transmission made or received by the SUBJECT TELEPHONE, including information on what portion of that tower is receiving the transmission ("PROSPECTIVE CELL-SITE INFORMATION").

7.   Pursuant to 18 U.S.C. § 3123(b)(1)(C), the authorization for the installation and use of a pen register and a trap and trace device applies not only to the telephone number listed above for the SUBJECT TELEPHONE, but also to any changed telephone number assigned to an instrument bearing the same ESN or IMEI numbers as the SUBJECT TELEPHONE, or any changed ESN or IMEI number subsequently assigned to the same telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number and/or ESN or IMEI number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the SUBJECT TELEPHONE.

4

8.   The service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order shall notify special agents of the Investigative Agency, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the SUBJECT TELEPHONE, including telephone numbers and subscriber information (published and non-published, and excepting call detail records, as described in 18 U.S.C. § 2703(c)(2)(C)), associated with these service changes.

9.   Pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), and 18 U.S.C. § 2703(c) and (d), upon service of this Order upon it the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order shall furnish special agents of the Investigative Agency forthwith all information, including but not limited to telephone subscriber information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace device unobtrusively and with minimum interference.

10.   The service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of

5

the Order furnish the results of the pen register and trap and trace device installations to special agents of the Investigative Agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

11. The service provider and any other person or entity that provides technical assistance in executing this Order shall be compensated by the Investigative Agency for reasonable expenses directly incurred in providing such assistance.

12. This Order shall be sealed until otherwise ordered by the Court, except that copies may be retained by the United States Attorney's Office, the Investigative Agency, the service provider and any other person or entity whose assistance is used to execute this Order.

13. Unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction: (a) the existence of the Order of Authorization; (b) the existence of the Order to Service provider; (c) the existence of the pen register and trap and trace device; (d) the production of the HISTORICAL or PROSPECTIVE CELL-SITE INFORMATION and (e) the production of the SPECIFIED SUBSCRIBER INFORMATION, to the listed subscriber for the SUBJECT

6

TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Dated:   Brooklyn, New York

April 8 ' 2011

S/ALC

---

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

7